IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEAMSTER LOCAL UNION NO. 714,   )<br>                                 )<br>          Plaintiff,             )<br>                                 )<br>     v.                          )<br>                                 )<br>GES EXPOSITION SERVICES, INC.,   )<br>                                 )<br>          Defendant.             )<br>_____)<br>                                 )<br>TEAMSTER LOCAL UNION NO. 714,    )<br>                                 )<br>          Plaintiff,             )<br>                                 )<br>     v.                          )<br>                                 )<br>FREEMAN DECORATING SERVICES, INC.,)<br>                                 )<br>          Defendant.             )  | No. 06 C 6695<br><br><br><br><br><br><br><br><br><br>No. 06 C 6696 |

## MEMORANDUM OPINION AND ORDER

Teamster Local Union No. 714 ("Teamsters," treated as a singular collective noun) brought each of these actions under Labor Management Relations Act §301 (29 U.S.C. §185), seeking to compel two employers--GES Exposition Services, Inc. ("GES") and Freeman Decorating Services, Inc. ("Freeman"), collectively "Employers"--to arbitrate certain work assignment disputes pursuant to Teamsters' collective bargaining agreement ("CBA") with each employer.  Teamsters has now moved in each action for summary judgment under Fed. R. Civ. P. ("Rule") 56, and each Employer has in turn moved for summary judgment to block Teamsters' action to compel arbitration.

For the reasons stated in this memorandum opinion and order,

a decision on the merits in either action would be premature because a second union, Riggers and Machinery Movers Local 136 ("Riggers"), must be joined (if feasible) as a necessary party to each action under Rule 19--and such joinder is indeed feasible. Each motion for summary judgment is therefore denied, and Teamsters is ordered to join Riggers as a party to each action.

## Background[1]

Each of GES and Freeman contracts union labor to carry out various work assignments at facilities controlled by the Metropolitan Pier and Exposition Authority ("Authority")(F. Mem. 1; G. Mem. 1-2). Teamsters and Riggers are two of those unions, and each union is a signatory to a CBA with GES and Freeman. Both Teamsters CBAs contain identical arbitration clauses (T. St. Ex. A ("Teamsters/GES CBA") at 5-6; T. St. Ex. B. ("Teamsters/Freeman CBA") at 5-6).[2] Riggers' CBA with each

---

[1] In compliance with this District Court's LR 56.1, both Employers and Teamsters have submitted statements highlighting the material facts that are not in dispute. This opinion will cite to Teamsters', GES' and Freeman's respective LR 56.1 statements as "T. St. ¶--," "G. St. ¶--" and "F. St. ¶--," and to the Joint Stipulation of Facts attached to T. St. as "Jt. Stip. ¶ --." Freeman's and GES' memoranda will be cited as "F. Mem." and "G. Mem.," respectively.

[2] Art. VII, §3 of both the Teamsters/GES and Teamsters/Freeman CBAs contain this identical arbitration clause:

> In the event the two (2) previous steps fail to settle the grievance and the Union desires to submit the grievance to arbitration the Union will notify the Company in writing within fifteen (15) working days of submission of the Company's answer to the Second (2nd)

2

employer also contains substantially similar arbitration clauses (see, e.g., F. St. Ex. 1 ("Riggers/Freeman CBA")).[3]

Additionally, both Teamsters and Riggers are signatories to

---

    Step meeting. In such event, the parties shall, within fifteen (15) working days, join in a request to the Director of Federal Mediation and Conciliation Service, to submit the names of five (5) Arbitrators. The Union and the Company shall alternately strike a name from the list (the first (1st) to strike shall be determined by lot) until the name of one (1) individual remains. The remaining individual shall be the sole Arbitrator of the question involved.

    The decision of the Arbitrator shall be final and binding on both parties. The cost of the Arbitrator shall be borne equally by the Union and the Company.

Art. VII, §2 defines the term "grievance" used in that clause:

    an alleged breach or violation of this agreement or a dispute arising out of the interpretation or application of the provision of this Agreement.

[3] Art. 13 of the Riggers/Freeman CBA includes this arbitration language:

    Any grievance, disputes or differences arising between an EMPLOYER and the UNION or between the EMPLOYER and the EMPLOYEES or an EMPLOYE [sic] which cannot be adjusted amicably, shall upon written request of either the EMPLOYER or the UNION be submitted to the Labor Management Committee which shall meet within three (3) days, Saturdays, Sundays and holidays excluded, and shall settle the controversy by a majority vote. All decisions of the Labor Management Committee shall be final and binding except where a majority decision cannot be reached. If no decision has been rendered within three (3) days, either party may make a request of the Federal Mediation and Conciliation Service, for a panel of five (5) names. By alternative striking, the last named arbitrator shall decide by final and binding arbitration proceedings the matter or matters in dispute.

a later-signed contract with the Authority ("Authority Agreement," G. St. Ex. C), Section 8(B) of which provides an exclusive dispute resolution mechanism for "jurisdictional" disputes between unions regarding work assignments at Authority-controlled facilities (J. St. ¶5).[4] Neither Employer is a signatory to that agreement (J. St. ¶5), but each claims that it can enforce the agreement's terms as a third-party beneficiary.

In June 2006 Teamsters filed grievances with GES and Freeman in which it contested the assignment to Riggers members of certain freight unloading work at Authority-controlled McCormick Place in Chicago (J. St. ¶6). Claiming that the unloading work should have been assigned to its own members under the Teamsters CBAs, Teamsters demanded that each Employer enter into a separate bilateral arbitration pursuant to its CBA to resolve the grievance (J. S. ¶7). But Employers, arguing that the present dispute is really a "jurisdictional" dispute over the unloading work between Teamsters and Riggers, insist that Teamsters must instead pursue its grievances via the terms of the Authority Agreement's dispute resolution procedure for multi-party arbitration (which would thus include both Teamsters and Riggers) (Jt. Stip. ¶8).

---

[4] Section 8(B) contains a multi-party binding arbitration procedure to be triggered "in the event [of] a jurisdictional dispute by and between any of the unions." "Jurisdictional dispute" is not defined.

4

As stated earlier, Teamsters filed these actions and now seeks summary judgment to compel GES and Freeman to arbitrate under their CBAs with Teamsters. In response, both Employers have raised the Authority Agreement as a defense and seek summary judgment and dismissal of the actions.

<u>Potential Joinder of Riggers</u>

Before turning to the merits of any of the parties' Rule 56 motions, this opinion must address one preliminary matter--the potential joinder of the absent union, Riggers. Here is Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

<u>Davis Cos. v. Emerald Casino, Inc.</u> 268 F.3d 477, 481 (7th Cir. 2001) has distilled that language into a three-element inquiry to evaluate whether an absent party should be joined:

> (1) whether complete relief can be accorded without joinder, (2) whether [the absent party's] ability to protect [its] interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless [the absent party] is joined.

5

While Davis links those factors with a conjunctive "and," which might perhaps be read as suggesting that each must be present to call for joinder, Rule 19 uses the disjunctive "or"--the fair reading of which clearly teaches that the presence of any one of those factors makes joinder appropriate. In addition, Rule 21 allows a court to order joinder sua sponte at any point in the litigation (Rule 21; McCowen v. Jamieson, 724 F.2d 1421, 1424 (9th Cir. 1984)). Finally, given the importance of joinder to protect the material interests of both existing and absent parties, a court should consider the issue before addressing the merits of the case (Tankersley v. Albright, 514 F.2d 956, 965-66 (7th Cir. 1975)). It is thus appropriate for this Court to look at the potential for joinder that has been highlighted by the Employers' and Teamsters' summary judgment submissions before it considers the merits of their substantive arguments.

Of course Riggers is the elephant in the room. Its members are currently performing the disputed work, and Employers' claim that it and Teamsters are in a jurisdictional dispute is advanced as the defense to Teamsters' efforts to compel bilateral arbitration. Yet neither Employers nor Teamsters have seen fit to bring Riggers into these actions. Even so, because the purposes of joinder include (1) protecting the interests of absent parties and (2) serving this Court's own interest in

6

judicial economy (Davis, 268 F.3d at 481), this opinion will independently evaluate whether Riggers should be joined based on the parties' summary judgment submissions.

As for the Davis-identified joinder factors, the first--that of being able to afford complete relief to the present parties without joinder--is really not an issue. This Court could certainly order bilateral arbitration based on Teamsters' CBAs, leaving it to another day and another tribunal to sort out the future ramifications of an arbitrator's award (cf. Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 265 (1964)). And on the other side of the coin, this Court could afford Employers complete relief by rebuffing Teamsters' efforts.

As for the second element--protecting Riggers' interests that could be prejudiced by the outcome of this litigation--it certainly suggests that joinder may be appropriate. If Teamsters were to prevail here, then proceed to bilateral arbitration and win an arbitrator's order granting it the disputed work, Riggers' members would necessarily lose out on the jobs (an interest potentially legally protected by the recognition clauses in Riggers' CBAs). In that event Riggers could no doubt seek to vindicate its interests by pursuing a grievance and the arbitration machinery in its own CBAs, just as Teamsters is attempting here. But with an arbitration award already entered in Teamsters' favor, generating Teamsters' ability to seek

7

judicial enforcement of such an award, it is surely not clear that Riggers' ability to protect its interests via its CBAs would not be "impaired or impeded" by the action set in motion here (see Gen. Warehousemen & Helpers Local 767 v. Standard Brands, Inc., 579 F.2d 1282, 1290 (5th Cir. 1978)(en banc)). In sum, the second Davis-articulated factor generates uneasiness--but not necessarily an answer to the question.

It is rather the third factor--placing Employers at a substantial risk of inconsistent legal obligations--that presents the real concern here (something that they voice repeatedly in their summary judgment submissions, albeit surprisingly without mentioning the possibility of joinder to address that concern). As already observed, if Teamsters should win its sought-after orders to compel bilateral arbitrations under its CBAs, the arbitrators could very well rule that the disputed work should be given to Teamsters. In such a case Employers would have an obligation to assign the unloading work at issue to Teamsters' members, which would take the work away from Riggers' members. It would frankly be astonishing if Riggers--not having been a party to that arbitration, and hence not bound by its outcome--would not then grieve and seek an arbitration order under its own CBAs to bring the work back to its members.

If Riggers were then to win its arbitration, look at Employers' dilemma. They could not of course be expected to

assign the same unloading work to both unions at the same time. Nor could they fairly risk being forced into the ongoing position of paying one union's members to unload the freight, while paying the other union damages for lost wages on the same work. That predicament would present a perfect example of the type of "multiple, or otherwise inconsistent obligation[ ]" that Rule 19 is meant to avoid.

While our Court of Appeals has yet to address the application of Rule 19 to similar facts, at least two other circuits have. Both of them found orders to join the absentee union wholly appropriate.

Window Glass Cutters League of Am. v. Am. St. Gobain Corp., 428 F.2d 353, 354-55 (3d Cir. 1970) found that joinder of the absentee union was justified when:

> there was a substantial risk that arbitration of the dispute between only the Company and [the party union] would expose the Company to the risk that the [absentee] Union would in turn institute a separate grievance against the Company leading potentially to conflicting awards.

In Window Glass Cutters an employer had assigned work to the Ceramics Union. Another union (the Glass Cutters), believing that the work was covered by its CBA with the employer, filed a grievance claiming entitlement to that work, and it then sought a judicial order to force the employer into bilateral arbitration. On the employer's motion, the district court ordered the Glass Cutters union to join the absent Ceramics Union as a party in the

9

action, and it later dismissed the action when the Glass Cutters union refused--and the Third Circuit upheld that ruling.

Local 1351 Int'l Longshoremens Ass'n v. Sea-Land Serv. Inc., 214 F.3d 566, 569-70 (5th Cir. 2000) similarly found joinder appropriate to bring a third-party union into another union's action to enforce a bipartite arbitration award in a jurisdictional dispute. Indeed, in that case the feared scenario had already come to pass: the employer had found itself subject to two inconsistent arbitration decisions each granting the same work to a different union (id. at 568, 570).

To be sure, Teamsters here insists in opposing Employers' motions that there is not yet any reason to believe that Riggers actually have an interest in this litigation, as that union has yet to file any grievance with Employers or otherwise initiate an actual jurisdictional dispute with Teamsters over the unloading work. Teamsters argues that if Riggers should invoke such an interest in the future, the issue could be dealt with at that time through the Authority Agreement process or otherwise, so Employers should have no fear of inconsistent judgments.

But as against that speculative wait-and-see approach, an order for joinder now is plainly a more prudent course of action.[5] First, there is no question that Riggers claim an

---

[5] Indeed, Window Glass Cutters, 420 F.2d at 355 rejected that selfsame argument.

10

interest in the disputed work assignment--they are, after all, currently performing the work (Int'l Longshoremen's & Warehousemen's Union, Local 14 v. NLRB, 85 F.3d 646, 652 (D.C. Cir. 1996)).[6] It is bizarre to urge that Riggers have failed to file a grievance or to claim the work in some other process when they are actually unloading the boxes each day. Not to bring in Riggers now would be to ignore the real dispute that is brewing.

Such a predicament is not new to the courts. In a substantially similar context, Local Union No. 1423, Glaziers, Affiliate of the Painters, Decorators, & Paperhangers of Am. v. P.P.G. Indus., Inc., 378 F. Supp. 991, 996 (N.D. Ind. 1974) put it this way:

> A dispute between two unions with the contractor in the middle was only avoided because of the method which the plaintiff [union] chose to pursue to seek resolution of its claim against the contractor. Since plaintiff chose to proceed under the arbitration machinery to which the Iron Workers' Union was not a party, and since the Iron Workers were proceeding with the work during the pendency of plaintiff's legal action, there was no reason for the Iron Workers to become involved. Nevertheless, the contractor is still in the middle, for if the [plaintiff] union is correct in its claims, the contractor will be forced to pay twice for the same work. When viewed in this posture, the court can only conclude that this is a work assignment-jurisdictional dispute.

---

[6] And should common sense prove wrong in this case, with Riggers instead abandoning any interest in the disputed work, it would be a simple--and reassuring--step for that union to so state affirmatively in its initial pleading upon joinder (see Window Glass Cutters, 428 F.2d at 355). But just imagine what Riggers would face from its members if it took that stance!

11

In short, the potential risk of later inconsistent arbitration judgments plainly makes joinder now the better course.[7] Four decades ago <u>Transp.-Communication Employees Union v. Union Pac. R.R.</u>, 385 U.S. 157, 161 (1966) expressed optimism that arbitrators would not read competing union CBAs to entitle each union to the same work for a shared employer. But even given that optimistic hope, "[a] possibility of such [inconsistent] liability is all that is required" for joinder to be appropriate (<u>Window Glass Cutters League of Am. v. Am. St. Gobain Corp.</u>, 47 F.R.D. 255, 258 (W.D. Pa. 1969)).[8] And as <u>Window Glass Cutters</u>, <u>id</u>. pointed out, that "possibility is readily apparent when one reviews the history of work assignment disputes in the legal literature."

Experience strongly counsels the course adopted here to avoid the kind of mess encountered in <u>Local 1351 Int'l</u>

---

[7] Over a quarter century ago this Court faced the contrasting scenario of a union seeking bilateral arbitration to stop an employer from foisting work upon its members that used to be performed by another union (<u>Local 189, Serv. Employees Union v. Scot Lad Foods, Inc.</u>, 513 F. Supp. 839, 842 (N.D. Ill. 1981)). In that case there was no risk of inconsistent arbitration judgments because if the party union lost and was forced to keep the disputed task, the non-party union would have no complaint about having one less task to do (and no loss of jobs). And should the party union win its action and push the disputed task back on the non-party union's members, the non-party union would have no complaint that it had to continue work that it had always performed in the past.

[8] This was of course the district court opinion that was then affirmed by the Third Circuit opinion cited and quoted earlier in this opinion.

12

Longshoremens Ass'n and Office & Prof'l Employees Int'l Union v. Sea-Land Serv. Inc., 210 F.3d 117 (2nd Cir. 2000). Those cases ultimately embroiled multiple arbitrations, two district courts and two circuit courts in the type of mischief that can result from a piecemeal adjudication of this type of dispute. Even if this initial litigation might perhaps be resolved without Riggers' involvement (cf. Carey, 375 U.S. at 265), gambling on that possibility would be ill-advised.

## Conclusion

Because there is every reason to believe that service upon Riggers is possible and that this Court's subject matter jurisdiction will continue, Teamsters is ordered to file an amended complaint joining Riggers as a necessary party to each action forthwith. Any decision on the substantive merits would thus be premature at this time. Each of the current motions for summary judgment is therefore denied--without prejudice, of course, to the possible renewal of such motions at an appropriate future date. Both actions are set for a status hearing at 9 a.m. August 24, 2007 to discuss further proceedings.

```
                        _____
                        Milton I. Shadur
                        Senior United States District Judge
```

Date: July 6, 2007